(Decided June 14th, 1860.)

## John Wells and Wm. Miller *vs.* Robert Turner.

Where the defendant purchases a steamer and has her repaired in the expectation of selling her to an association, of which he and the plaintiffs were, or were to be, members, he is liable in an action at law to the plaintiffs, for such repairs, whether the vessel was sold to and employed by the association or not.

But if the repairs were made by the plaintiffs, upon an agreement or understanding between the defendant and the plaintiffs, that such an association was to pay for them, or that they should look to the association for payment, he is not liable therefor in such an action.

Where the question is on whose credit was the labor and materials sued for done and furnished, each party has the right to ask for instructions based on his view of the case, if the evidence relied on be legally sufficient to warrant the conclusion sought to be deduced from it.

In such a case, if the plaintiff's prayer places his hypothesis of the testimony fairly before the jury, it should be granted, and if granted with a proviso qualifying the instruction to his prejudice, he has cause of appeal.

Where the plaintiff's prayer placed his right to recover for repairs done to a steamboat, on the facts of ownership of the boat by the defendant and that the work was done for him and by his order, a modification added by the court that the jury must find it was done for *his benefit,* and not for the benefit of another, changes the instruction and is erroneous.

If a party orders work to be done, it is immaterial for whose benefit may be intended; he must pay for it, unless *credit* therefor be given to another.

Wells & Miller *vs.* Turner.

Where the plaintiffs, as partners, were doing business as *machinists*, in the city of Baltimore, the acts and declarations of one of them, in reference to subscriptions to, and formation of, an association to purchase an ice and tow-boat, for the purpose of keeping open the harbor of that city; are not binding upon his co-partner, such an association not being within the scope of their partnership business.

Where the acquiescence of one of two partners in the articles of an association is but an inference from his attendance at meetings and otherwise participating in promoting its objects, the consent of the other partner thereto cannot be inferred therefrom, because an inference from an inference cannot be permitted.

Appeal from the Superior Court of Baltimore City.

*Assumpsit,* brought on the 30th of April 1857, by the appellants, co-partners, trading under the name and firm of Wells & Miller, against the appellee, to recover for work and labor done and materials furnished in and about the repairs of a steamboat. Plea *non assumpsit.*

*Exception.* Much testimony was offered on both sides which need not be stated at length. The bill for the repairs amounted to $2870.47, and was made out against the "Steamboat Ice King and owners," and was admitted to be correct as to the work done and prices charged. On the part of the plaintiffs, the evidence tended to show that the steamer "Susquehanna," afterwards called the "Ice King," was purchased by the defendant, and repaired by the plaintiffs, who were machinists, upon the request and by the order of the defendant. The defence set up is, that there was an association or partnership in this steamboat, and that Turner, the defendant, had no other relation to this boat than as being one of the partners, and that the plaintiffs were also partners in the enterprize, quite as active, and participating as largely in its management, as Turner, and as evidence of this partnership, or association, a paper marked A. B., was offered in evidence, the heading of which is as follows:

"The undersigned, merchants, shippers and business men of the city of Baltimore, in view of the necessity of keeping open the harbor of said city from the *obstructions of ice,* and also in order to assist vessels of heavy draught, unable to reach the city with full cargoes, as well as to render relief to

vessels in distress, or otherwise needing either a lighter or tow-boat, do hereby promise and agree, each to the other, and to each and all of whose names are hereunto subscribed, to pay the sum or sums affixed to our several names, for the purpose of purchasing and fitting the steamboat "Susquehanna," of three hundred and eighty-five horse power, register about five hundred tons, and of six thousand barrels capacity on deck, as a general steam tow-boat lighter and ice-boat, to be employed for the purpose hereinbefore expressed; and it is hereby also agreed by and between the undersigned that the capital of $25,000, the requisite purchase money of and expenditures on said steamboat, shall be deemed to be a capital stock, and be divided into shares of $100 each, and that the sum or sums respectively subscribed by us shall be represented by and be understood to mean the equivalent thereof in the shares of said capital stock."

The list of subscribers to this paper was headed by the defendant, Robert Turner, for $1500, and among the other subscriptions appears the name, "Wells & Miller, $500." But there is no evidence that the plaintiffs, or either of them, signed or authorized this signature to be put thereto. The purport of the other evidence in the case is sufficiently stated in the opinion of this court, and the arguments of counsel. The plaintiffs presented the following prayer:

"If the jury find from the evidence that the repairs stated in the bill, offered in evidence by the plaintiffs, were made and done by them on the engine and boilers of the steamer Susquehanna, for the defendant and by his order and direction, and that at the time when said repairs were so ordered and done, the defendant was the owner of the said steamer, then the plaintiffs are entitled to recover, unless the jury shall find, from the evidence, that it was agreed between the plaintiffs and the defendant, that the said repairs should be paid for by some person, or persons, other than the defendant, or unless they shall find that the repairs were done by the plaintiffs upon the credit of some person, or persons, other than the defendant."

The defendant then presented the following prayer:

"If the jury find, from the evidence, that the plaintiffs subscribed their partnership name to the paper offered in evidence in this case, and marked A.B., or permitted or authorized any other person to subscribe their name to said paper, or after their name had been subscribed, they had, or either of said plaintiffs had, knowledge that their name had been subscribed to said paper, and that said plaintiffs acquiesced in such subscription of their name, or permitted it to remain upon said paper; and that John Wells, one of the plaintiffs, attended one or more meetings of the subscribers to said paper, as stock or shareholders in said steamer Susquehanna, and that the work and materials, sued for in this case, were done and furnished after the said plaintiffs became subscribers, as aforesaid, then the plaintiffs cannot recover in this action for any part of the work and materials which the jury may find was done and furnished after the plaintiffs became subscribers to said paper, marked A.B."

The court (LEE, J.) refused to grant the plaintiffs' prayer as offered, but added thereto the following modification: "Provided the jury shall find that the repairs were done for the benefit of the defendant, and not for the benefit of an association," and granted the same with this modification.

The court also refused to grant the defendant's prayer as offered, but modified it by adding thereto these words: "Provided, the jury do not find, from the evidence in this cause, that the defendant offered to pay for said repairs, and acknowledged his liability for them, as repairs done for his benefit and not for the benefit of an association of subscribers," and granted the same with this modification.

The plaintiffs' excepted to the refusal of the court to grant their prayer as offered, and to the modification thereof made by the court, and to the granting of the defendant's prayer as modified by the court. The verdict and judgment were in favor of the defendant, and the plaintiffs' appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*I. N. Steele,* for the appellants, argued:

1st. That the prayer offered on the part of the appellants should have been granted, because there was abundant evidence to sustain the hypothesis of fact on which it was founded, and because the proposition of law which it involved, viz., that he who orders repairs on his own vessel is liable to pay for them, unless he is exempted from liability by agreement, or the repairs are done on the credit of some other person, was plainly correct.

2nd. The modification of the prayer by the court, in effect, instructed the jury, that even if they should find that the repairs were done for the appellee, on his own boat, by his own order, without any agreement exempting him from liability, and not upon the credit of any other person, still he was not liable unless they should also find that the repairs were done for *his benefit,* and not for the *benefit* of an association, thus propounding to the jury a confused, uncertain, and secondary test of the appellee's liability which could have been resorted to only in the absence of all proof necessary to furnish a better test, and which was altogether inapplicable to the state of facts which the prayer itself assumed. *Abbott on Shipping,* 34, 35, 132. 1 *Term. Rep.,* 108, *Farmer vs. Davies.* 2 *Bing.,* 179, *Harrington vs. Fry.*

3rd. This modification was erroneous, because it assumed the existence of an association at the time the repairs were ordered, or at least left it the jury to find that fact, when the proof in the cause went only to the extent of showing, that an effort was on foot to form an association.

4th. That the prayer of the appellee, with the proviso annexed to it, was not authorized by the evidence in the cause. The uncontradicted testimony of the appellee's own witnesses was, that the appellants did not subscribe either copy of the paper marked A.B., and that their signature was affixed to one paper and copied on the other without their knowledge or authority, and there was further no evidence that one of the plaintiffs, Miller, had knowledge of it, and as to the other the proof was insufficient in law to establish his knowledge.

18    v.16

8 *Md. Rep.*, 186, 187, *White vs. Davidson.* 8 *G. & J.*, 323, *Steam Nav. Co. vs. Dandridge.* 9 *Pet.*, 629, *Owings vs. Hull.* 11 *Md. Rep.*, 259, *Howard vs. Carpenter.*

5th. That, even if there was evidence to go to the jury that one of the appellants afterwards had knowledge of the fact of the unauthorized subscription of their name, still the instruction was wrong, because one partner cannot bind the firm by contracts outside of the ordinary partnership business, and *a fortiori* the knowledge of one partner of an unauthorized contract of that description cannot affect or bind his co-partner. *Coll. on Part.*, sec. 483. *Story on Part.*, secs. 110, 111. 8 *Md. Rep.*, 186, 187, *White vs. Davidson.*

6th. That the prayer of the appellee, which was in fact not affected by the proviso added by the court, made the mere attendance of Wells, at one or more meetings of the subscribers to the paper A.B., and the subscription of that paper by the appellants, either directly or through some person whose act they acquiesced in, an absolute defence to the action for work done after this subscription, and ought not to have been granted, because the naked fact of Wells' attendance at such meetings, though it might be evidence of his knowledge and ratification of the previous subscription of the firm's name, had not in law any distinct significance or effect in ascertaining the liability of the appellee, because the paper A.B., was, by its terms and true construction, prospective and conditional, looking to the future purchase and joint ownership of the steamer, and did not protect the appellee from liability on his individual contract with the appellants, made while he was owner of the steamer, and because this paper never became absolutely binding on the subscribers to it, and the enterprize which it contemplated was abandoned without an organization, and because the jury were not required to find that the repairs were ordered or authorized by the subscribers to that paper. *Coll. on Part.*, secs. 510, 1082, *et seq.* 10 *Barn. & Cress.*, 128, *Dickinson vs. Valpy.* 6 *Bing.; N. C.*, 44, *Howell vs. Brodie.* 6 *Bing.*, 776, *Fox vs. Clifton.* 9 *Barn. & Cress.*, 632, *Bourne vs. Freeth.* 7 *Barn. & Cress.*, 409, *Vice vs. Anson.* 6 *Mann. & Gran.*,

926, *Wood vs. Duke of Argyll.* 1 *Wend.*, 63, *Murray vs. Richards.* 25 *Wend*, 475, *Sandford vs. Handy.*

*Benj. C. Barroll* and *Chas. H. Pitts*, for the appellee, argued:

1st. There was error in the plaintiffs' prayer as offered, and the following defects are suggested: 1st. If the work was done for the defendant, and by his order, yet if it was so done for the benefit of the association or partnership, upon the partnership property, then the plaintiffs, if they were themselves of the number of the co-partners, were not entitled to recover. 2nd. The prayer wholly omitted all notice of the arrangement made with Turner, for the payment of the repairs, at the meeting of the 26th of January 1857. 3rd. The last clause of the prayer left it to the jury to find the credit given to the association, but excluded Turner from the same as a stockholder or partner. 4th. The hypothesis of the prayer, calling upon the jury to find the ownership of the boat was well calculated to embarrass and mislead the jury. According to the law of the plaintiffs, the ownership of the vessel was wholly irrelevant. 2 *Gill*, 393, *Henderson vs. Mayhew.* 5th. The prayer put it to the jury to find as a fact an *agreement* between plaintiffs and defendant, of which there was, no evidence. 6th. The first paragraphs of the prayer are objectionable, as containing, by insinuation and ingenious suggestion, the existence of a *contract* between the plaintiffs and defendant, of which there was no evidence. The prayer suggests what had no foundation in fact, to wit: that there was an individual contract by the appellee with the appellants. 7th. In point of fact, the plaintiffs got all the benefit of their prayer, because the modification added by the court, did not vary the legal proposition contained in the prayer. The prayer called upon the jury to find the work done "for the defendant," while the modification merely explained that work for the defendant, meant work for the benefit of the defendant. The plaintiffs lost nothing by the modification, but got, substantially, what they asked for, and a great deal more than they were entitled to. 2 *Greenlf. on Ev.*, sec. 937.

2nd. The defendant's prayer was properly granted, because, if the jury found the facts contained in the prayer, then the plaintiffs were co-partners in the vessel, and in the joint enterprise, and could not, at law, recover for work done for the partnership. The modification of the prayer given by the court, gave the plaintiffs all the benefit of the question, to whom the credit was given, and even gave them the benefit of making the promise of Turner to pay, and his acknowl-edgement of liability, conclusive evidence of the right of the plaintiffs to recover, thus giving the plaintiffs ground to stand on, to which they were not entitled. Shareholders in a joint stock company, not incorporated, are *inter se* partners. *Story on Part., sec.* 164. *Coll. on Part., sec.* 1087. 8 *Eng. C. L. Rep.,* 27, *Holmes vs. Higgins.* 4 *Metcalf,* 535, *Tappan vs. Bailey.* Where a joint stock company is abandoned and fails, the relation of the parties is not thereby changed. 20 *Eng. C. L. Rep.,* 67, *Doubleday vs. Muskett.* 46 *Eng. C. L. Rep.,* 930, *Wood vs. Duke of Argyll.* It is not necessary that all the shares should be taken. 4 *Metcalf,* 535, *Tappan vs. Bailey.* Legal ownership in one, is consistent with equitable ownership in others. 16 *Pick.;* 403, *Vinal vs. Burrill.* 1 *Mason,* 308, *Weston vs. Penniman.* Part owners are, in all cases, responsible, *as partners,* for the repairs to the ship. 3 *Kent, (8th Ed.,)* 156. *Abbott on Shipping,* 143. A ship's husband may be one of the part owners, or a stranger, and his contracts for the vessel bind all parties. 3 *Kent, (8th Ed.,)* 157. The repairs, in this case, were not furnished on the credit of the appellee, but for the benefit of all concerned in the joint enterprise, upon the credit of the copartnership. *Abbott on Shipping,* 38, 39, 40, and *notes.* 2 *H. & G.,* 295, *Causten vs. Burke.* 3 *H. & J.,* 505, *Taylor vs. Terme.*

3rd. In whatever aspect these prayers may be viewed, the jury could not have found for the appellee, unless they had found that he was not responsible for these repairs, and that they were not done for his benefit. Wells, one of the plain-tiffs, was a prime mover in this whole enterprise, and it is said now, that in doing so, he committed a fraud upon his partner,

Miller.   But there was no such fraud, for even supposing this subscription was not made with the knowledge or authority of Wells and Miller, still their subsequent assent or acquiescence, amounts to a ratification of it.   It is true there must be knowledge, actual or implied, to make acquiscence binding; but this *scienter* may be established by facts and circumstances, as in other cases.   And, upon the facts in this case, Miller had such notice and knowledge of the matter as to make his acquiescence ratification.   Again, Wells had the power, without consent of his partner, Miller, to agree to do these repairs and to look to this association for pay, and Miller would have been bound by it, because it was a matter within the scope of their partnership business; and there is evidence that such an agreement was made by Wells.

Tuck, J., delivered the opinion of this court.

In cases like the present the court of final resort should not express any opinion upon the facts, further than may be necessary to determine whether the evidence is legally sufficient to warrant the conclusions of law asserted in the prayers, because, if the record be remanded for another trial, re-marks by us upon the testimony might have weight with the jury, who alone are competent to pass upon questions of fact.

The action was instituted by the appellants against the appellee, to recover for work, labor and materials in and about the repairs of a steamboat.   The correctness of the account is not denied by the defendant, but he insists that there was an association or partnership of persons in the steamboat; that he had no other relation to it than as being one of these persons, and that the plaintiffs were also partners, quite as active and participating as largely in getting up the enterprize for keeping open the harbor of Baltimore, as was the defendant himself.   From this alleged relation it is contended that the plaintiffs cannot sue the defendant at law for work done for the benefit of the association, or to advance its interests. The propositions of law and fact, therefore, in the court below, resolved themselves into the question, whether the work

was done on the credit of the defendant, or on that of the association, at that time in progress of being formed, and for whose use, as it is said, the boat was undergoing alterations and repairs. If Turner purchased the boat, and had her altered and repaired in the expectation of selling her to, or of having her employed by, the association mentioned by the witnesses, he ought to pay, whether she was so employed or not; but if the work was done upon an agreement, or understanding, between him and the plaintiffs, that the association was to pay, or that the plaintiffs should look to the association for payment, then the defendant is not liable in this action. The correctness of the rulings below must be tested by the application of these principles to the prayers offered by the parties.

The evidence is so contradictory, or we should rather say, that so much was said, written and done, during the time covered by the transactions detailed in the record, that the jury might have found one or the other of the theories asserted by the parties, according to the views they might have taken of the testimony, the credit to be attached to the witnesses, and the circumstances and motives under which these transactions took place. Each party had the right to call on the court for instructions, based on his view of the case, if the evidence relied on was legally sufficient to warrant the conclusion sought to be deduced from it. If an illustration be needed, we may state the familiar distinction between a collateral and an original undertaking, where it is sought to charge one person for the price of goods sold and delivered to another, there being no writing to bind the party. The plaintiff may ask the court to say to the jury that they must find for him, if they believe, from all the evidence, that credit was given to the defendant, and so the defendant may claim the verdict if the jury find that credit was given to the party receiving the goods.

As we have said, the question in this case was, to whom was the credit given, and if, as we think, the prayer of the plaintiffs placed their hypothesis of the testimony fairly before the jury it ought to have been granted, and if granted with

a proviso qualifying the instruction to the prejudice of the party tendering the prayer, they have cause of appeal. It left the jury to find whether the repairs and alterations were done by the plaintiffs for the defendant, and by his order and direction, and whether he was at the time the owner of the boat; upon their so finding the plaintiffs claimed the verdict. And, to allow the defendant the benefit of his defence, the jury was also authorized to find, if they should take that view of the case, that it was agreed between the parties that the work should be paid for by some person or persons other than the defendant, or was done upon the credit of some other person or persons, in which event the prayer conceded the plaintiffs could not recover. Now, the allegation of the defendant was, that there had been an understanding that the association should pay, and, under this clause of the prayer, the defendant was fully protected.

The claim and the defence were thus presented to the jury, and their consideration invited to both. We cannot perceive how this instruction could have injured the defendant.

But it is said that the plaintiffs had the full benefit of the prayer as offered, because the proviso did not change or modify its meaning. We must suppose that the court below thought otherwise, and that the proviso was designed to change the prayer, else why was the addition made; and we think that it had such effect. The prayer made the plaintiffs' recovery depend on the ownership of the boat by Turner, and that the work was done for him and by his order; the proviso added another fact to be found, viz., that the work was done for his benefit and not for the benefit of an association. If a man orders work it is immaterial for whose benefit it may be intended; he must pay. Even if the plaintiffs knew that the boat was designed to be sold for the association mentioned in the evidence, their right to recover against the party ordering the work cannot be questioned, unless, as admitted by the prayer, credit was given to the association. We are of opinion that the prayer should have been granted as tendered by the plaintiffs.

We also think there was error in the defendant's prayer, as offered, and that it was not perfected by the proviso added by the court. There was no evidence from which the jury could find that the plaintiffs, or either of them, signed, or authorized their names to be signed to the paper referred to in the prayer, nor of any acquiescence on their part after it had been signed. To be sure, it appears that Wells, one of the plaintiffs, was actively participating in the transactions for opening the harbor, and for employing this boat for that purpose, and, we think, there is evidence from which his knowledge and acquiescence may be inferred; but Miller, the other member of the firm, does not appear to have participated in these proceedings, or to have done any thing from which his knowledge that the partnership name had been put to the paper could be deduced; and we do not perceive how he can be bound by the acts of his partner, unless it be shown that he was acting by his authority, for the firm, or within the scope of his power as a member of the firm. We gather from the record that they were machinists, and the acts and declarations of Wells, in reference to the formation and objects of the association were not connected with the business of his co-partnership. The fact of the acquiescence of Wells in the articles of association is but an inference from his attendance at meetings and otherwise participating in promoting its objects; but, according to the principles of the law of evidence, an inference from an inference cannot be permitted; the consent, therefore, of Miller, cannot be deduced from Wells' participation in these proceedings.

