WILLIAM E. SCHLOEGEL *v.* GUY C. SYKES ET AL.
[No. 17, April Term, 1928.]

682

*Decided June 20th, 1928.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Edward J. Colgan, Jr.,* for the appellant.

*Joseph R. Walter,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered against the appellant in favor of the appellees in the Baltimore City Court. There is but one exception and that is to the granting of the plaintiff's first and third prayers and to the refusal of the defendant's A prayer. The defendant's prayer, to the refusal of which exception is taken, is a demurrer prayer, and makes necessary the consideration of so much of the evidence as may show whether there is sufficient proof of the plaintiffs' claim for submission to the jury.

The suit was brought in assumpsit on the money counts, with a special count alleging the employment of the appellees

by the appellant to do certain work concerning the property of the Baltimore-Washington Speedway, Inc., at Laurel, Maryland, of which corporation the appellant was president, the performance of the work by the appellees, and an agreement for settlment of the bill incurred. The evidence of one of the appellees, G. Forney Shryock, is that the appellant engaged him to make a survey of three hundred acres of land near Laurel, Maryland. "He said he was ordering this work for his own private information; that the construction of the speedway was under way and he was uncertain whether the speedway structure was fully located within the outlines of the property and he asked me to find out and tell him personally and not to tell any one else what the purpose was in making the survey down there and to report my findings to him. Prior to this time I had never heard of the speedway. After I received the data from him he told me I might as well make the entire plat and run the entire lines. The next I heard from him was when I received the order to do the work. This was on a postal card," offered in evidence, which is as follows:

"Mailed June 10, 1925.

"(Addressed:) Mr. Shryock,

"10 W. Chase Street, City.

"Friend Shryock: I have determined to let you go ahead with the survey of the Baltimore-Wash. Speedway Track we spoke of. Please give this your immediate attention and oblige,

"Yours truly,

"W. E. Schloegel,

"1300 Hearst Tower Bldg."

There was evidence that the appellees, pursuant to this arrangement, went on with the work and made the survey and a plat of the property; that after the work was done the appellees wrote the appellant two letters requesting payment; that the appellees saw the appellant two or three times about the work and their bill, and on these occasions the appellant told them that his company intended to have a meeting in a few days and he would take it up with them, and "we told

him that it was a question between us and him; he had ordered the work and Shryock & Sykes were looking to him for payment of the bill rather than any one else—I mean instead of any one else, and he said, 'Well, I won't pay it,' so the two of us walked out." Mr. Shryock further testified that the appellee had never told either him or his partner that they were to look to the company for the payment of the bill and that this was the first time they had ever heard about the company paying for it, "after the work was all finished." The witness further testified that at a conference in his attorney's office he had exhibited a blue print which did not show the location of the Bowie Road on the property and, "when Mr. Schloegel saw the blue print didn't show the Bowie Road on it, he was asked to do this additional work by making an additional survey which would locate the Bowie Road in reference to the property being surveyed." The witness further testified that this work was done and the change made on the plat. It appears that a settlement of the account was agreed upon at $435, which was to include the additional surveying and amendment of the plat; that $100 of this was to be paid immediately and it was so paid, by a check of William E. Schloegel, the appellant, to the order of Joseph R. Walter, who was the attorney for the appellees.

It appears that the plat as amended never was shown to or turned over to the appellant or the Speedway Corporation, or to their attorney, the witness saying that "the survey should be paid for before it was turned over and especially in a case where the payment is so long in coming."

This is substantially the appellees' evidence of their employment by the appellant and, in our opinion, clearly shows it to be a question for the jury as to whether the appellees were engaged by the appellant, on his personal responsibility, to do the work sued for, and brings this case clearly within the decision in *East Baltimore Lumber Co. v. Israel Congregation,* 100 Md. 125. See 1 *Poe, Pl. & Pr.,* sec. 357; *Wells v. Turner,* 16 Md. 143; *Boyle v. Rider,* 136 Md. 286, 296; *Auburn Brick Co. v. Cowan Co.,* 125 Md. 221, 226.

The appellant testified that he ordered the work done by the appellees for the Speedway Corporation; that he never told Mr. Shryock that the work was to be done for him personally or that he was going to pay for it; that he had no interest in the property outside of the fact that he was president of the corporation. Answering the question whether he had ever seen the plat before the meeting in Mr. Walter's office in December, 1925, the appellant testified: "I never saw the plat before, that I remember, I looked at it and said, 'this plat is not what I ordered for the company. There is no railroad track—the plat is not here that was there—no railroad track, no Bowie Road, no Laurel Road,' and I asked him about certain points, and Mr. Shryock didn't know anything about the boundary lines and he did not show anything that was of any benefit to the company, and then Mr. Colgan suggested that he complete the plat, showing the different lines, the roads and railroad track * * * and then they agreed on the payment of $100 by the company to perfect the plat and turn over the copy to Mr. Colgan." He testified that he never got the plat and never saw it afterwards, and that he paid the $100 on account for the company because it was necessary for them to have the plat at that time.

The first prayer of the plaintiff here is substantially the plaintiff's first prayer in the case of *Wells & Miller v. Turner*, 16 Md. 133, which was there approved, and in the instant case fairly presents the plaintiffs' theory under the evidence.

The appellees' third prayer, which was granted and to which the appellant devotes practically all his brief, is as follows: "The jury are instructed that, if the jury shall find a verdict for the plaintiffs, they are entitled to recover the sum of $335, provided the jury shall also find that the said amount was agreed upon and admitted as the amount due at the time it was agreed the payment of $100 was to be made on account of said bill, provided the jury shall also find the $100 to have been so paid and that it was paid by the defendant to the plaintiffs or their attorney for them on the under-

standing that the balance of said bill was the amount due and owing on account thereof." If there had been no contradiction of the plaintiffs' claim of performance of the contract, this prayer would have been good because of the fact that the amount of damages recoverable by the appellees against either the appellant or the Speedway Corporation had been agreed upon at $335, and would have been proper under the decision in *Martin Fertilizer Co. v. Thomas,* 135 Md. 633, 646. Under this instruction, assuming there had been performance of the contract by the appellees, if the jury believed the appellant had engaged the work to be done for himself or had promised to pay for it, the verdict should have been for the appellees. On the other hand, if the jury believed there was no such understanding, then the verdict should have been for the appellant. The appellant contends that, because the prayer does not have the words "from the defendant" after the words "amount due," the prayer should have been rejected for indefiniteness. We cannot agree with this contention, because it clearly appears from the evidence that the only question before the jury was as to whether the appellant had incurred the debt of the Speedway Corporation, and this question was fairly presented to the jury by the plaintiffs' first prayer. *Hochschild, Kohn & Co. v. Cecil,* 131 Md. 70, 78.

There is contradictory evidence as to whether or not full compliance by the appellees with their contract or the terms of their employment required the appellees to deliver to the appellant, the Speedway Corporation, or its attorney, a corrected plat showing thereon the location of the railroad, the county roads, and other objects. Mr. Colgan testified that it was agreed that "we would pay the $100 on account of that bill and he would send his men down and correct his plat in the particulars that we desired and turn the corrected copy over to me. That was the definite, unequivocal agreement and understanding, that all four of us had in Mr. Walter's office." In reply to this Mr. Shryock testified, in answer to the question as to why he did not turn the plat over to Mr. Colgan or Mr. Schloegel, or the Washington-

Baltimore Speedway, after the change was made in it and after he had been given the check for $100, "that the survey should be paid for before it was turned over and especially in a case where the payment was so long in coming."

The prayer is misleading and confusing in that it did not require the jury to find that all the work, agreed to be paid for at the sum of money agreed upon, had been done by the appellees. The jury might have found that the appellees were entitled to recover for only part of the work agreed to be done, yet the prayer, as drawn, if their verdict was for the appellees, implied it should be for the full amount regardless of complete performance. The prayer should have been drawn so as to require the jury, before finding for the full compensation to be paid as agreed, to find that the appellees had fully performed their contract.

There was evidence from which the jury could have found there had not been complete performance of all work contemplated at the final conference, at which the compensation had been agreed on at $435 for work theretofore done and thereafter to be done, but nevertheless the jury could have found for the appellees for the work actually done under a *quantum meruit* (*Walsh v. Jenney*, 85 Md. 240; *Weiss v. Northern Dredge & Dry Dock Company*, 155 Md. 351), and a verdict would not disclose with certainty whether the verdict was for part or complete performance, while the inference from the prayer is, whether the verdict is based on part or total performance, the damages should be for complete performance.

For the reasons herein stated, we are of the opinion that the appellees' third prayer should have been refused.

*Judgment reversed, with costs to the appellant, and a new trial awarded.*